**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SYLVIA DUNN,

      *Plaintiff*,

   v.

DOUGLAS A. COLLINS,
*Secretary, United States Department of
Veterans Affairs*,

      *Defendant*.

Civil Action No. 1:21-cv-02845 (CJN)

<u>**MEMORANDUM OPINION**</u>

    Sylvia Dunn, an employee at the Department of Veterans Affairs, sued the government alleging that she had suffered unlawful discrimination under various civil rights laws.  *See* ECF 1 at 16–28.  The Court previously dismissed some of Dunn's claims but allowed her to proceed on her race and sex discrimination and retaliation claims, ECF 12; following discovery, the government now moves for summary judgment on those claims, ECF 30.  The Court concludes that as to each remaining claim, Dunn has either failed to exhaust it or cannot demonstrate that a reasonable juror could conclude that she suffered unlawful discrimination, and therefore grants the government's motion.

### I.  Background

    Dunn is an African American woman who started working at the Department of Veterans Affairs over thirty years ago.  ECF 33-6 at 10.  In 2011, she transitioned into a new role as the Director of Resource Management within the Office of Operations, Security, and Preparedness.  *Id.* at 9–10.  Dunn suggests that the first few years in the new role went well, as evidenced by her

high performance ratings.  *See* ECF 33-7.  According to Dunn, that began to change in August 2016, when Kevin Hanretta, her (white and male) supervisor, excluded her from meetings of the Department's Human Resources Council.  *See* ECF 30-3 at 3.  Dunn alleges that this exclusion precipitated a years-long campaign of discrimination and retaliation, during which Hanretta undermined Dunn's authority, took responsibilities away from her, and elevated male staff members at her expense.  *See generally* ECF 1.  Although Dunn identifies Hanretta as the person most responsible, she alleges that he collaborated with others—including Elyshia Davis, his executive assistant; Prince Taylor, Dunn's subordinate; and Donald Loren, the assistant secretary of the office—to discriminate and retaliate against her.  *See* ECF 33-5 at 4, 14–15.

In November 2017, Dunn filed a formal EEO complaint.  ECF 30-3 at 85.  She asserted that she had suffered a hostile work environment based on her sex, as well as harassment, retaliation, pay discrimination, and disability discrimination.  *Id.*  The complaint also featured a three-page narrative describing the bases for her claims.  *Id.* at 86–88.  Dunn later amended her EEO complaint to add additional claims of retaliation, alleging that Hanretta had retaliated against her in several ways for filing the complaint.  *See id.* at 83.

The Equal Employment Opportunity Commission interpreted the amended complaint—without any objection from Dunn—as raising twelve events in which Dunn was allegedly "subjected to a hostile work environment based on sex (female), disability, and reprisal."  *Id.* at 139–40; *see also* ECF 33-11 at 28–30.  Notably, the Commission understood the complaint to raise only two claims of discrete act discrimination separately from the overarching hostile work environment claim.  *See* ECF 30-3 at 140 n.1; *see also* ECF 33-11 at 30.  An EEO investigator prepared a report about the relevant events after conducting interviews with witnesses and reviewing documents in early 2018.  *See* ECF 30-3 at 117–36.

2

In July 2021, an administrative judge at the Commission granted summary judgment to the Department. *Id.* at 139. The judge concluded that Dunn had failed to establish a prima facie case of discrimination and had not alleged facts that could create a genuine dispute about the existence of a discriminatory motive. *Id.* at 150. In reaching this conclusion, the judge noted that "[t]he record demonstrates that several of the allegations either did not occur as alleged or did not occur at all." *Id.*

Dunn then filed this suit. ECF 1. Her complaint raised multiple claims, including (1) sex discrimination under Title VII, (2) race discrimination under Title VII, (3) hostile work environment under Title VII, (4) retaliation under Title VII, (5) race discrimination under Section 1981 of the Civil Rights Act of 1866, (6) disability discrimination under the Americans with Disabilities Act, and (7) retaliation under the Whistleblower Protection Act. *See id.* at 16–28. The government moved to dismiss all seven of Dunn's claims. ECF 8. Dunn withdrew her claim based on the Civil Rights Act but maintained that the other claims should proceed. ECF 9.

The Court granted the government's motion as to alleged retaliation under the Whistleblower Protection Act, alleged hostile work environment under Title VII, and alleged disability discrimination under the Americans with Disabilities Act. *See* ECF 12 at 11–15. But it declined to dismiss the sex and race discrimination claims and the retaliation claim under Title VII. *See id.* at 4–11. The Parties then engaged in discovery. *See* ECF 23. Upon the close of that process, the government moved for summary judgment on the remaining claims. ECF 30.

## II.    Legal Standard

"Summary judgment is appropriate only if there is 'no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "In determining whether there are

genuine factual issues in dispute," the Court "must draw all reasonable inferences in favor of the nonmoving party." *Id.* The nonmovant, however, still "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### III.    Analysis

### A.    Exhaustion

Title VII of the Civil Rights Act of 1964 prohibits the federal government from discriminating against its employees. *See* 42 U.S.C. § 2000e-16. But before bringing a suit under Title VII, a federal employee must first "run a gauntlet of agency procedures and deadlines to administratively exhaust his or her claims." *Crawford v. Duke*, 867 F.3d 103, 105 (D.C. Cir. 2017). The employee must "file an 'initial charge' with her employer before pursuing a Title VII claim in court." *Webster v. Del Toro*, 49 F.4th 562, 566–67 (D.C. Cir. 2022) (quoting 42 U.S.C. § 2000e-16(c)). "Such a 'charge' must include the 'date, place and circumstances of the alleged unlawful employment practice.'" *Id.* at 567 (quoting 42 U.S.C. § 2000e-5(b)).

As noted above, Dunn did initiate a formal EEO complaint seeking administrative relief. *See* ECF 30-3 at 85. But that complaint did not raise many of the discrimination claims she now asserts. *See id.* at 83–88. This deficiency is fatal to those claims because "[d]ismissal is required when a plaintiff fails to exhaust h[er] administrative remedies with respect to particular claims." *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 276–77 (D.D.C. 2011).

Most obviously, Dunn failed to exhaust her claims of race discrimination. Not only did Dunn not allege in her EEO complaint that she was subjected to a hostile work environment due to her race, she did not raise any claims at all based on race. *See* ECF 30-3 at 85–88 (complaining of "sex based harassment" and Hanretta's preferential treatment of "the male staff" in the context

of a hostile work environment but not any race-based discrimination).  Because Dunn "wrote nothing whatsoever about race" in her EEO complaint, "[t]here can be little doubt . . . that the charge lacked 'sufficient information' to put [the Commission] on notice of [her] claims of [race] discrimination." *Holmes v. WMATA*, 723 F. Supp. 3d 1, 14 (D.D.C. 2024) (quoting *Crawford*, 867 F.3d at 109).

Dunn also failed to exhaust most of her claims of sex discrimination.  The only place Dunn raised any claim of sex discrimination in her EEO complaint was in relation to her allegations of a hostile work environment.[1]  *See* ECF 30-3 at 85–88.  "Because a hostile work environment claim and a discrete discrimination claim are 'different in kind,'" however, "exhausting one does not exhaust the other."  *Moore v. U.S. Dep't of State*, 351 F. Supp. 3d 76, 96 (D.D.C. 2019) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)); *see also Taylor v. Mills*, 892 F. Supp. 2d 124, 137 (D.D.C. 2012) ("[A] hostile work *environment* is an ongoing, ambient form of discrimination that is categorically distinct from *discrete* actions of discrimination, retaliatory or otherwise."); *Bain v. Off. of Att'y Gen.*, 648 F. Supp. 3d 19, 60 (D.D.C. 2022).  The Commission appears to have charitably interpreted Dunn's EEO complaint as raising two claims of discrete act discrimination out of the twelve events that cumulatively made up her claim of a hostile work environment—her claims that Hanretta (1) denied her request to telework as a reasonable accommodation and (2) redirected her EEO responsibilities to Davis "were also accepted as discrete acts."  ECF 30-3 at 140 & n.1, 150 n.2; ECF 33-11 at 30, 45.  Yet very little of these discrete act claims remains live.  The claim based on the denial of a reasonable accommodation

---

[1] Dunn emphasizes that she "reported discriminatory conduct based on sex" when she initially contacted an EEO counselor.  ECF 33-1 at 44; *see also* ECF 33-22 at 2–3.  But Dunn "cannot rely on the EEO counseling report to establish exhaustion of a claim that [s]he failed to include in h[er] formal complaint."  *Hamilton v. Geithner*, 666 F.3d 1344, 1350 (D.C. Cir. 2012).

was about disability—not sex—discrimination.  Given that the Court already dismissed Dunn's claims of disability discrimination for other deficiencies, *see* ECF 12 at 13–15, it is irrelevant that she might have exhausted them.  As to Dunn's claim that "Hanretta redirected the EEO responsibilities from under her management and placed them under the position description of Executive Assistant," ECF 30-3 at 140, her failure to link her claims to race until she filed this suit remains a bar to considering any claim of race-based discrimination.  All that is left of Dunn's claims of discrete act discrimination, then, is the claim that the alleged shifting of EEO responsibilities constituted sex discrimination.

As for the retaliation claims Dunn presses here, her amended EEO complaint did include claims for retaliation, *see id.* at 83, 85, so she exhausted her administrative remedies for at least some aspects of those.  But exhausting a claim as to some allegations is not a blank check for later bringing new claims.  *See Romero-Ostolaza v. Ridge*, 370 F. Supp. 2d 139, 149 (D.D.C. 2005) ("Requiring a plaintiff to exhaust each discrete claim of discrimination or retaliation comports with the purpose of the exhaustion doctrine to give the agency notice of a claim and the opportunity to handle it internally and ensures that only claims plaintiff has diligently pursued will survive." (alteration adopted) (citation and internal quotation marks omitted)); *see also Morgan*, 536 U.S. at 114 ("Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'").  Dunn's EEO complaint raised a retaliation claim based on (1) a "privacy breach" resulting from Hanretta sharing Dunn's EEO claim number and information about her request for reasonable accommodations with Taylor and Davis, (2) an "isolation of responsibilities" due to the removal of Dunn's supervisory role over two GS-13 positions, (3) an alteration of "position management" by redirecting some of Dunn's responsibilities to Davis, (4) a lack of "performance management compliance" because Henretta

had not provided Dunn a performance review for 2017 nor a performance plan for 2018, and (5) Hanretta's refusal to invite Dunn to Human Resources Council meetings.[2]  *See* ECF 30-3 at 83, 87.  Dunn failed to exhaust other alleged acts of retaliation—most notably, the allegation in her complaint here that Hanretta and others "fabricat[ed] false claims against" her.  ECF 1 at 24.

Dunn raises two arguments for why the Court should nonetheless consider her unexhausted claims, but both fail.  First, relying on *Park v. Howard University*, 71 F.3d 904, 907 (D.C. Cir. 1995), Dunn argues that the claims "are like or reasonably related to the allegations" underlying the claims she did raise in her EEO complaint.  ECF 33-1 at 43.  It is doubtful, however, that such a broad interpretation of *Park* is good law.  On its own terms, *Park* cautioned that "[a] court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process."  71 F.3d at 907.  The Supreme Court's subsequent statements in *National Railroad Passenger Corp. v. Morgan* that "[h]ostile environment claims are different in kind from discrete acts," and also that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act," cast doubt upon the suggestion that filing a charge of a hostile work environment is enough to exhaust claims of discrete discriminatory acts that allegedly contributed to the hostile environment.  536 U.S. at 113, 115.

Further calling into question Dunn's reliance on *Park*, "a majority of courts in this district have concluded that *Morgan* overruled the *Park* 'like or reasonably related' rule, and that therefore every discrete claim of discrimination must be administratively exhausted."  *McCallum v.*

---

[2] It is not entirely clear from the record that Dunn intended for this final claim about not being invited to Human Resources Council meetings to fall within the retaliation bucket.  Although Dunn did not mention this act in her amended EEO complaint that added retaliation claims, *see* ECF 30-3 at 83, she did list it under the header of "Retaliation Discrimination" in the narrative accompanying her original EEO complaint, *id.* at 87.  Given that Dunn is the nonmovant at summary judgment and because the EEO complaint can be fairly read to consider this exclusion to be an act of retaliation, the Court treats this claim as an exhausted retaliation claim.

*Mayorkas*, No. 21-cv-1911, 2023 WL 3203011, at *7 (D.D.C. 2023). Although the Court of Appeals has thus far declined to decide "whether *Park* survives *Morgan*," it has made clear that "a 'charge' alleging one 'unlawful employment practice' does not permit the employee to challenge others." *Webster*, 49 F.4th at 567–68. Dunn's reliance on a generic rule statement from *Park*—a decision that notably did not hold that a charge alleging a hostile work environment provides a basis for later litigating claims of discrete discriminatory acts—is therefore insufficient to overcome the Court of Appeals's and Supreme Court's more specific clarifications about the importance of not treating claims of a hostile work environment and discrete discriminatory acts as interchangeable.

Second, Dunn argues that even if she "did not explicitly spell out" a discrimination claim on the face of her EEO complaint, she still exhausted such a claim because the rest of the complaint supports it. ECF 33-1 at 44. This Court has previously rejected a similar argument. *See Azumah v. Yellen*, No. 20-cv-2696, 2021 WL 3784323, at *4 (D.D.C. 2021) ("Azumah argues that failing to check a box on the informal or formal charge should not lead to dismissal for failure to exhaust. But a number of decisions in this district are to the contrary."). In addition, even if Dunn's argument were correct on the law, its premise is not because the rest of Dunn's EEO complaint does nothing to cure the lack of discrete act claims on the face of the complaint. The EEO complaint nowhere even mentions Dunn's race, and its references to Dunn's sex are only in the context of her salary and of her assertions that Hanretta had created a hostile work environment. *See* ECF 30-3 at 85–88. Moreover, Dunn did not object when the Commission investigated and adjudicated her case as raising a single issue: "Whether [Dunn] was subjected to a hostile work environment based on sex (female), disability, and reprisal." *Id.* at 139. Such a failure weighs against Dunn given that "[w]here an agency reasonably fails to identify a claim for investigation

and the plaintiff does not object to this refusal to investigate, the plaintiff cannot show that [s]he has exhausted administrative remedies as to this claim." *Bassett v. Walsh*, No. 22-cv-2408, 2023 WL 4999176, at *3 (D.D.C. Aug. 4, 2023) (citation and internal quotation marks omitted). The Court accordingly grants summary judgment to the government on exhaustion grounds as to all of Dunn's claims of race discrimination, most of her claims of sex discrimination, and some of her claims of retaliation.

## B.    Merits

### 1.    Sex Discrimination

The only claim of discrete act sex discrimination that Dunn plausibly exhausted was her claim that "Hanretta redirected the EEO responsibilities from under her management and placed them under the position description of Executive Assistant to the Assistant Secretary." ECF 30-3 at 140. But Dunn's complaint here does not include this discrete act in its list of allegedly adverse employment actions taken based on her sex. *See* ECF 1 at 17. Instead, the count for sex discrimination focuses only on how Hanretta left Dunn out of meetings, kept information from Dunn that was needed to execute her job responsibilities, and fabricated false accusations against Dunn. *Id.*; *see also* ECF 30-1 at 15 (pointing out that, "[i]n her complaint, Dunn raises a sex discrimination claim based on three—and only three—specific acts"). "Plaintiffs cannot use summary judgment briefing to press claims not raised in their complaints," *Weatherspoon v. Azar*, 380 F. Supp. 3d 65, 75 (D.D.C. 2019); *see also Mosleh v. Howard Univ.*, No. 19-cv-339, 2022 WL 898860, at *7 (D.D.C. Mar. 28, 2022) ("[A] plaintiff cannot substitute new allegations at the summary-judgment stage for those made in the complaint."); *Yoder v. Architect of the Capitol*, No. 23-cv-2214, 2025 WL 915611, at *3 (D.D.C. Mar. 26, 2025) ("[W]here a count alleges that only some of a defendant's actions were illegal, a plaintiff may not make additional claims in her

opposition."), so Dunn cannot escape summary judgment based on an argument that "is not the theory presented in the complaint," *Hall v. Ford*, 856 F.2d 255, 267 (D.C. Cir. 1988).

In any event, this claim fails on the merits. Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), "the complainant must first establish a *prima facie* case of prohibited discrimination." *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998). "To establish a prima facie case of discrimination, a claimant must show that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Wiley*, 511 F.3d at 155 (citation and internal quotation marks omitted). If the complainant establishes these elements, "the burden then shifts to the employer to articulate legitimate, nondiscriminatory reasons for the challenged employment decision." *Aka*, 156 F.3d at 1288. And "[s]hould the employer succeed in presenting such reasons, the burden then shifts back to the complainant, who then has an opportunity to discredit the employer's explanation."[3] *Id.*

---

[3] In *Brady v. Office of the Sergeant at Arms*, the Court of Appeals clarified that "the question whether the employee made out a prima facie case is almost always irrelevant" because "'[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, . . . [t]he district court has before it all the evidence it needs to decide whether the defendant intentionally discriminated against the plaintiff.'" 520 F.3d 490, 493–94 (D.C. Cir. 2008) (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)). But its suggestion that "the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*" applies only "where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision." *Id.* at 494. Accordingly, the first step of the *McDonnell Douglas* framework is still relevant where, as here, the government "does not offer a non-discriminatory reason for the challenged action because it contends the alleged [action] never occurred." *Robinson-Reeder v. Am. Council on Educ.*, 674 F. Supp. 2d 49, 53 n.2 (D.D.C. 2009), *aff'd*, 417 F. App'x 4 (D.C. Cir. 2011); *see also Lawrence v. Lew*, 156 F. Supp. 3d 149, 162 (D.D.C. 2016) ("Both the courts of this District and subsequent panels of the D.C. Circuit have recognized that proceeding to the *Brady* analysis may be premature when the defendant contests whether an adverse employment action occurred at all."); *Figueroa v. Pompeo*, 923 F.3d 1078, 1087 (D.C. Cir. 2019) ("*Brady*'s suggested preference for merits resolution on the third prong is just that—a suggestion, which the District Court should follow only when feasible.").

Here, Dunn has failed to proffer sufficient evidence from which a reasonable juror could find that she established a prima facie case of sex discrimination. As for her contention that Hanretta reassigned her EEO duties to Davis, the only evidence on which Dunn relies is her own conclusory account, in an interrogatory response, regarding the alleged shifting of duties. *See* ECF 33-1 at 27–28; ECF 33-5 at 19. Dunn's deposition testimony reveals that the only support for the contention that Hanretta altered her EEO duties is Dunn's own interpretation of changes to Davis's executive assistant position description and an email from another employee who copied Davis on a discussion about an EEO matter. *See* ECF 33-6 at 228–32; ECF 33-13 at 5, 10. But a suggestion that Davis might have become more involved in EEO activities, without more, does not mean that Dunn's EEO duties were reduced in any meaningful way—especially given that Dunn fails to explain or provide evidence about which specific EEO responsibilities she could no longer do. The government, in contrast, cites both affidavits from other employees stating that Dunn's EEO duties were never changed, ECF 30-3 at 18–20, 109–10, and employment records from before and after the alleged redistribution that show that Dunn's EEO duties consistently remained an important part of her job,[4] *id.* at 62–63, 69, 77. Although the Court must of course draw all inferences in Dunn's favor at this stage, *see Anderson*, 477 U.S. at 255, she has failed to adduce evidence of any specific lost duties that could support an inference in her favor on this issue.[5]

---

[4] Indeed, the description of Dunn's performance goals regarding "EEO Compliance" remained the same in her performance plans for 2016, 2017, 2018, and 2019. *See* ECF 33-7 at 42; ECF 33-8 at 3, 13, 19.

[5] Contrary to the government's suggestion, *see* ECF 37 at 22–23, it is not the fact that Dunn's testimony is self-serving that makes it insufficient to meet her burden. After all, "[t]o the extent the testimony of a witness who is also a party may be impaired by party self-interest, it is ordinarily the role of the jury—not the court on summary judgment—to discount it accordingly." *Johnson v. Perez*, 823 F.3d 701, 710 (D.C. Cir. 2016). Instead, it is the conclusory and non-specific nature of Dunn's testimony that prevents her from defeating summary judgment.

"Absent any concrete examples or evidence to support her allegations, the [C]ourt concludes that [Dunn] has failed to establish a prima-facie case of discrimination." *Richard v. Bell Atl. Corp.*, 209 F. Supp. 2d 23, 35 (D.D.C. 2002).

The lack of any evidence that could allow a jury to infer sex discrimination also dooms this claim. "[T]he prima facie case requires 'evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion.'" *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) (alterations adopted) (emphasis omitted) (quoting *Teamsters v. United States*, 431 U.S. 324, 358 (1977)). "A plaintiff can raise an inference of discrimination by showing that she was treated differently from similarly situated employees who are not part of the protected class."[6] *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (citation and internal quotation marks omitted). But "[e]vidence that is 'merely colorable' or 'not significantly probative' is insufficient to establish this element of her claim at summary judgment." *Chambers v. Burwell*, 824 F.3d 141, 145 (D.C. Cir. 2016) (quoting *Anderson*, 477 U.S. at 249–50).

Dunn points out that all of Hanretta's other direct reports were male and did not receive a similar redistribution of duties.[7] *See* ECF 33-1 at 4, 31–33. But all of these male comparators (unlike her) were in the Senior Executive Service. Dunn nevertheless contends that she had a

---

[6] Although reliance on comparator evidence is of course "not the only way" that a plaintiff can support an inference of discrimination, *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005), it is the only evidence Dunn relies on to support an inference of sex discrimination here, *see* ECF 33-1 at 31–33.

[7] The comparators whom Dunn names are Lewis Ratchford, Executive Director, Office of Emergency Management and Resilience (OEMR); David Elizalde, Senior Advisor to the OEMR Director; Frederick Jackson, Executive Director, Office of Security and Law Enforcement (OSLE); Daniel Galik, Executive Director, Office of Identity, Credential & Access Management; and Rodney Emery, Former Executive Director, Office of Identity, Credential & Access Management. *See* ECF 33-1 at 3–4.

comparable role to them as a senior leader and that the discrepancy in titles was due to Hanretta's refusal to properly classify her at a higher level. *Id.* at 32–33. But "[f]or a plaintiff to prove that she is similarly situated to another employee, she must demonstrate that . . . all of the relevant aspects of her employment situation were nearly identical to those of the other employee." *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115–16 (D.C. Cir. 2016) (alteration adopted) (citation and internal quotation marks omitted). To be sure, Dunn attempts to minimize the seniority differences between herself and the comparators, but comparators being "above or below [the plaintiff]'s pay grade" is classic evidence that they were not similarly situated. *Id.* at 1116. And because the comparators managed entirely different programs and departments than Dunn,[8] no reasonable jury could conclude that the comparators "were similarly situated to [her] in all relevant respects." *Id.* That Hanretta allegedly transferred Dunn's EEO duties to Davis—another woman—further undermines any inference that sex motivated this alleged action. *Cf. Murray v. Gilmore*, 406 F.3d 708, 715 (D.C. Cir. 2005) (explaining that although a plaintiff does not have to show that she was replaced by a person from a different class to establish a prima facie case, "a replacement within the same protected class cuts strongly against any inference of discrimination").

### 2. Retaliation

Dunn plausibly exhausted retaliation claims based on (1) a "privacy breach" resulting from Hanretta sharing Dunn's EEO claim number and information about her request for reasonable

---

[8] Dunn admits both that the "male direct reports" executed their jobs "with different skills and responsibilities as each was managing different areas," ECF 33-5 at 42, and that her "position as the Director for the Office of Resource Management is not identical to the Deputy Assistant Secretary for the Office for Emergency Management and Resilience (OEMR), the Executive Director of Office for Security and Law Enforcement (OSLE), and the Executive Director for the Office of Identity and Credentialing & Access Management (ICAM) (who are all males)," ECF 30-3 at 188.

accommodations with Taylor and Davis, (2) an "isolation of responsibilities" due to the removal of Dunn's supervisory role over two GS-13 positions, (3) an alteration of "position management" by redirecting some of Dunn's responsibilities to Davis, (4) a lack of "performance management compliance" because Henretta had not provided Dunn a performance review for 2017 nor a performance plan for 2018, and (5) Hanretta's refusal to invite Dunn to Human Resources Council meetings.    ECF 30-3 at 83, 87.    To survive summary judgment on these claims, Dunn must "establish a prima facie case of retaliation by showing (1) that [s]he engaged in statutorily protected activity; (2) that [s]he suffered a materially adverse action by h[er] employer; and (3) that a causal link connects the two."[9]  *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).    Upon such a showing, "the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for its actions."  *Id.* (citation and internal quotation marks omitted).  And "[i]f the employer does so, the burden-shifting framework disappears, and a court reviewing summary judgment looks to whether a reasonable jury could infer retaliation from all the evidence."  *Id.* (alteration adopted) (citation and internal quotation marks omitted).  For several reasons, Dunn cannot meet her burden for any retaliation claim.

As with her claims of sex discrimination, Dunn attempts to improperly expand the scope of her retaliation claims by invoking acts that she did not plead in her complaint here.  Although Dunn's response to the government's motion for summary judgment cites 16 instances in which she allegedly faced retaliation, *see* ECF 33-1 at 36–38, her complaint raises a much narrower set

---

[9] The Court of Appeals has suggested that *Brady*'s de-emphasis on the prima facie case extends to retaliation claims.  *See Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009).  But, again, because the government disputes whether many of these retaliatory acts actually occurred or were materially adverse, ECF 37 at 32–38, considering whether Dunn established a prima facie case of retaliation is not an "unnecessary and improper 'sideshow'" for those claims like it may be in many other cases, *Jones*, 557 F.3d at 678 (quoting *Brady*, 520 F.3d at 494); *see also Figueroa*, 923 F.3d at 1087.

of retaliatory acts, *see* ECF 1 at 23–26.  In particular, Dunn pleaded only that she "faced retaliation . . . when [she] was harassed and intimidated by Mr. Hanretta, Mr. Taylor and Ms. Davis by fabricating false claims against [her] and attempting to remove her responsibilities and circumvent [her] from conducting her responsibilities as Director of ORM."  ECF 1 at 24.  Because "[i]t is axiomatic that the Plaintiff cannot amend her Complaint by the briefs in support of or in opposition to a motion for summary judgment," Dunn "cannot use her opposition to allege new retaliatory conduct."  *Jones v. Quintana*, 975 F. Supp. 2d 63, 76 (D.D.C. 2013) (citation and internal quotation marks omitted), *aff'd*, 621 F. App'x 7 (D.C. Cir. 2015); *see also Spence v. U.S. Dep't of Veterans Affs.*, No. 19-cv-1947, 2022 WL 3354726, at *6 (D.D.C. Aug. 12, 2022) ("[A] plaintiff must plead 'which retaliatory acts were directed at her and when.'" (alteration adopted) (quoting *Poole v. U.S. Gov't Publ'g Off.*, 219 F. Supp. 3d 80, 84 (D.D.C. 2016))), *aff'd*, 109 F.4th 531 (D.C. Cir. 2024).  Due to this pleading deficiency, Dunn's claims that Hanretta retaliated against her by sharing her EEO claim and accommodation information with Taylor and Davis, delaying her performance evaluation, and refusing to invite her to Human Resources Council meetings are not properly before the Court.

In any event, these claims also fail on the merits.  To start, Dunn has failed to provide specific evidence to establish that some of the alleged retaliatory acts happened.  As discussed above regarding the claim of sex discrimination, Dunn has not adduced evidence that Hanretta reassigned her EEO duties to Davis.  *See supra* at 11–12.  To the extent that Dunn argues that Hanretta also reassigned some of her other non-EEO responsibilities to Davis in retaliation for filing an EEO complaint, this contention fails for similar reasons.  Dunn has not provided enough details to establish that any of her duties were removed, as her conclusory answers to interrogatories—the only evidence that she relies on—lack the specificity needed for the factfinder

15

to draw an inference that Hanretta meaningfully altered Dunn's duties.[10]  *See* ECF 33-1 at 37 (not citing any record evidence for the claim that "Hanretta continuously reassigned [Dunn]'s duties to subordinates"); ECF 33-5 at 15–17 (alleging that "Hanretta adjusted his Executive Assistant position description to remove [Dunn's] responsibilities for HR and EEO duties" without providing clear specifics).  Dunn's failure to provide specifics about the changes in duties is fatal to her claim because "minor inconveniences and alteration of job responsibilities do not rise to the level of adverse action necessary to support a claim."  *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (citation and internal quotation marks omitted).

Dunn has similarly not provided evidence that Hanretta shared her EEO claim number and information about her request for reasonable accommodations with Taylor and Davis.  As an initial issue, Dunn's lack of specificity and consistency in detailing her claims makes it difficult for the Court to fully understand the scope of this claim.  In her interrogatory answer about Hanretta's alleged improper sharing of the "EEO Case," for example, Dunn explained that she took issue with Hanretta "shar[ing] [her] EEO duties with . . . Taylor and . . . Davis" and "add[ing] EEO responsibilities to his Executive Assistant position description."  ECF 33-5 at 19.  This answer appears to conflate Dunn's claim about sharing her EEO claim number and accommodation information and Dunn's claim about reassigning her job responsibilities, leaving the former without any substantiation or elaboration.  In any event, Dunn fails to provide any evidence from which a reasonable juror could find that Hanretta gave some sort of information connected to her EEO case and accommodation request to Taylor and Davis.  In fact, Dunn admitted in her deposition that certain unspecified "[e]mails" were the only "proof" that she had that Hanretta

---

[10] At the motion-to-dismiss stage, the Court warned Dunn that she would "need to bring forth more details about what these diminished responsibilities entailed for her claim to survive."  ECF 12 at 8.  She has not proffered such details.

allegedly shared any of this information with Taylor.  *See* ECF 33-6 at 215–22.  But the only emails in the record about this alleged sharing of information show that Hanretta reassured Dunn that although Taylor was initially listed as an alternate Local Reasonable Accommodation Coordinator on the form, he never sent her information to Taylor, and confirmed that he quickly removed Taylor from having any involvement with the request going forward.  *See* ECF 30-3 at 98, 113, 115.  When coupled with the fact that Dunn had no personal knowledge that Hanretta himself shared this information, she cannot prevail on this claim.

Next, although the government appears to acknowledge that Hanretta requested that two GS-13 positions no longer be directly supervised by Dunn,[11] she fails to establish that changing her supervisory responsibilities from direct to indirect constituted a materially adverse action.  The government has explained and put forth evidence that Dunn retained supervisory responsibilities over the GS-13 positions—albeit in a less direct form.  *See* ECF 30-3 at 18 (Hanretta affidavit elaborating that "the two new GS-13 positions would work with/for the GS-14" and that "[a]ll these positions in ORM fall under the Director of Resource Management," who was Dunn); *id.* at 96 (organization chart showing that GS-13 positions fell under Dunn's supervision, with GS-14 employees in between on the hierarchy).  It accordingly contends that "[i]t is hard to see how having Dunn supervise the positions indirectly via an intermediate level of staff rather than directly

---

[11] The government's opening brief argues that Dunn "seems to misunderstand what Hanretta was telling her to do" because "he was only telling her to remove them from her direct supervision— she was still responsible for them indirectly via her supervision [of] others to whom those positions would report."  ECF 30-1 at 28.  Its reply brief, in contrast, takes the more aggressive stance that Dunn "adduces no evidence at all . . . that certain challenged actions happened," including the claim that Hanretta removed two GS-13 positions from her supervision.  ECF 37 at 32 & n.3.  "[B]ecause it was not raised in the original brief and a movant cannot use its reply brief to expand the scope of a summary judgment motion," *Mokhtar v. Kerry*, 83 F. Supp. 3d 49, 77 n.17 (D.D.C. 2015), *aff'd*, No. 15-5137, 2015 WL 9309960 (D.C. Cir. Dec. 4, 2015), the Court declines to consider the government's new argument that the GS-13 positions were never removed from Dunn's direct supervision.

would dissuade her from making or supporting a charge of discrimination.  Indeed, if anything, having the positions report to someone whom Dunn in turn supervised only elevated her relative position within the agency, thus enhancing her stature."  ECF 30-1 at 28.  Dunn has declined to engage with this argument, choosing instead to merely list the removal of the two GS-13 positions from her direct supervision as one of many retaliatory acts that "significantly impacted the level of responsibility and opportunity for promotion available to [her]."  *See* ECF 33-1 at 36–39.  Such a conclusory argument, without any evidence suggesting that having more indirect supervisory responsibilities was detrimental to Dunn's career advancement, is insufficient to support a finding that "a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Similarly, Dunn has not presented sufficient evidence to establish that the delay in Hanretta returning her 2017 performance review amounted to a materially adverse action.  Dunn contends that as a form of retaliation, Hanretta delayed her "2017 evaluation for nine months after the performance period without providing any justification."  ECF 33-1 at 36.  The government concedes that this delay occurred but contends that it was due to Hanretta considering whether Dunn's own self-assessment justified a change from his initial planned ratings for that year.  *See* ECF 30-3 at 26 (Hanretta stating that he reached his final assessment after reviewing Dunn's self-assessment from December 7, 2017); *see also id.* at 30 (Taylor explaining that Hanretta asked him to review Dunn's self-assessment to ensure that his rating was not unjustified).  Although Dunn has a plausible—but conclusory—argument that Hanretta's lower rating of her could have impacted her career advancement, *see* ECF 33-1 at 40 (focusing on the standard "[f]or a low performance score to be actionable"), she fails to provide any evidence that *the delay* in receiving that rating harmed her career prospects.  The Court accordingly "conclude[s] that [Dunn]'s delayed

evaluation is not an adverse action because [she] has failed to demonstrate that this delay had any tangible impact on h[er] employment." *Mack v. Strauss*, 134 F. Supp. 2d 103, 114 (D.D.C. 2001), *aff'd*, No. 01-5122, 2001 WL 1286263 (D.C. Cir. Sept. 28, 2001); *see also Jimenez v. Wolf*, No. 19-cv-2055, 2020 WL 13546497, at *10 (D.D.C. Sept. 29, 2020).

In addition, Dunn fails to establish a causal link between her protected activity of filing an EEO complaint on November 6, 2017,[12] and the alleged retaliatory acts. Dunn argues that "[t]he closeness in time . . . between [her] protected activities and the adverse actions and hostile treatment she experienced is sufficient to show a causal link and establish a *prima facie* case of retaliation." ECF 33-1 at 41. But when a plaintiff relies on "mere temporal proximity" to establish an inference of causation, "the temporal proximity must be *very close*." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (emphasis added) (citation and internal quotation marks omitted).

Dunn fails to establish that any of the alleged retaliatory acts took place close enough to when she filed her EEO complaint. As a threshold issue, Dunn does not specify exactly when certain acts occurred. In her EEO complaint, she stated that she "discovered" on March 13, 2018, that Hanretta had shared her EEO claim information with Taylor and Davis, and "discovered" on March 20, 2018, that Hanretta had redirected some of her responsibilities to Davis. ECF 30-3 at

---

[12] Dunn's complaint here makes clear that her "EEOC complaint [being filed] on November 6, 2017," was the "prior statutorily protected activity" for which she suffered retaliation. ECF 1 at 24. Her amendment to her EEO complaint to add retaliation claims similarly stated that these claims arose "as a result of filing a[n] EEO complaint of discrimination." ECF 30-3 at 83. In Dunn's briefing at summary judgment, however, she attempts to move up the relevant timeline, arguing that "[t]he retaliation did not begin with [Dunn]'s formal complaint; it started earlier and escalated over time." ECF 33-1 at 36. As it has done previously, the Court rejects such an effort to "change her theory of when she took part in protected activity" given that "a plaintiff cannot amend [her] pleadings in responding to a motion for summary judgment." *Simpkins v. Jacobs Eng'g Grp., Inc.*, No. 19-cv-447, 2021 WL 5182098, at *6 (D.D.C. Sept. 29, 2021).

83; *see also* ECF 1 at 9, 14 (pleading that she learned of these actions on those respective dates). "When the chief evidence relied upon by the plaintiff to establish the causal connection is the temporal proximity, courts have, at a minimum, required the plaintiff to plead specific dates of the protected activity and the adverse action." *Johnson v. DeJoy*, No. 23-cv-2342, 2024 WL 4215557, at *8 (D.D.C. Sept. 17, 2024) (citation and internal quotation marks omitted); *see also Spence*, 2022 WL 3354726, at *9 (explaining that the Court "cannot possibly make an inference of causation necessary to sustain [a] claim" where the plaintiff "neglects . . . to specify the dates" of the relevant acts (citation and internal quotation marks omitted)).  Because Dunn has not established when these alleged retaliatory acts took place,[13] it is difficult to infer causation based on temporal proximity.

Even treating the dates that Dunn "discovered" that these alleged acts occurred as the relevant dates for evaluating temporal proximity, ECF 30-3 at 83, the gap in time is too long to support an inference of causation.  "[T]he Supreme Court has cited circuit decisions suggesting that in some instances a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation," but there is no "bright-line three-month rule." *Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012) (citing *Clark Cnty.*, 532 U.S. at 273–74); *see also Davis v. District of Columbia*, 503 F. Supp. 2d 104, 125 (D.D.C. 2007) (concluding that "three and four month respective delays [are] too tenuous to support an inference of causation").  Given that the Court of Appeals held in *Taylor v. Solis* that "an inference of retaliatory motive based upon the mere proximity in time between [the protected activity] and the [retaliatory act] two and one-half months later would be untenable,"

---

[13] Once again, the Court previously warned Dunn that "[a]t a later stage . . . [she] will need to bring forth more facts showing temporal proximity or some additional evidence of but-for causation." ECF 12 at 10.

571 F.3d at 1322, the gap of more than four months cannot be considered "very close" on the record here, *Clark Cnty.*, 532 U.S. at 273 (citation and internal quotation marks omitted). Applying this logic to a claim with a specific date, Dunn's claim of an "isolation of responsibilities," which she said occurred on February 28, 2018, is similarly too late because it occurred more than three-and-a-half months after she filed an EEO complaint.[14]  ECF 30-3 at 83.  Due to the lack of sufficient temporal proximity—the only basis on which Dunn argues that she can establish causation, ECF 33-1 at 41—these claims fail.[15]

Dunn's other retaliation claims—arising from Hanretta's delay in filling out Dunn's 2017 performance review and his exclusion of her from Human Resources Council meetings—also have timeliness defects that bar an inference of causation.  Dunn complains that Hanretta delayed her 2017 performance review for nine months without justification, as he did not return it to her until June 26, 2018.  *See* ECF 30-3 at 28.  But focusing only on the end date ignores the actions that took place closer to when Dunn filed her EEO complaint on November 6, 2017.  Most notably, on December 7, 2017, Dunn composed a self-assessment that argued that she should have received a rating of exceptional instead of Hanretta's intended rating of fully successful, which means that he must have told her of his initial review sometime before then.[16]  *See* ECF 30-3 at 26; ECF 33-21

---

[14] Moreover, the organizational chart outlining the planned hierarchy for these GS-13 positions predates Dunn's filing of her EEO complaint, *see* ECF 30-3 at 96, further impairing any inference that making Dunn's supervisory role more indirect was an act of retaliation.

[15] The Court of Appeals has cautioned against focusing exclusively on timing where a plaintiff "pled several other facts . . . that together support an inference of causation."  *Ho v. Garland*, 106 F.4th 47, 52 (D.C. Cir. 2024); *see also Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 69 (D.C. Cir. 2015).  Dunn, however, does not proffer other evidence and put forth an alternative theory that could support an inference of causation; she rests her causation argument solely on temporal proximity.  *See* ECF 1 at 23–26; ECF 33-1 at 41.

[16] Dunn denies the government's statement of the undisputed material fact that "[a]t some point on or prior to December 7, 2017, Hanretta informed Dunn that he intended to rate her as 'Fully Successful' overall in her Fiscal Year 2017 performance review."  ECF 33-2 at 5–6.  The narrative

at 3.  Although the record is devoid of the timing of other specific actions that took place between Dunn completing her self-assessment and Dunn receiving the final version of the performance review from Hanretta on June 26, 2018, the timing of the self-assessment establishes that Hanretta provided initial ratings in a timely manner despite Dunn filing an EEO complaint around the same time.  At least some portion of the subsequent delay in Dunn receiving a final performance review was therefore attributable to Dunn herself—not a retaliatory motive on the part of Hanretta.  And that Dunn fails to establish how quickly performance reviews were ordinarily completed, especially where an employee provided a self-assessment to try to change an initial rating, prevents an inference that Dunn's filing of the EEO complaint caused the delays.

Finally, Dunn cannot show causation for her exclusion from Human Resources Council meetings because she was barred from those meetings well before she filed her EEO complaint.  On August 19, 2016, Dunn emailed Pam Mitchell to request that she be invited to the Human Resources Council meetings.  ECF 30-3 at 3.  On August 22, 2016, Mitchell then forwarded that email to Hanretta and explained that "[u]nfortunately, [she] can't add her to the HR Council as an alternate" because "membership is limited to executives unless there is no other alternative for an organization."  *Id.*  These emails reveal that the decision to exclude Dunn from Human Resources Council meetings predated her filing of an EEO complaint by more than a year.  Because "retaliatory motives cannot be inferred from a course of action that began prior to protected

---

accompanying this denial fails to controvert the government's timeline, however, because it provides no specific dates or details that rebut the assertion that Hanretta told Dunn of his planned rating before December 7.  *See Toomer v. Mattis*, 266 F. Supp. 3d 184, 191 (D.D.C. 2017) ("An assertion of fact properly presented in a movant's statement of material facts is not 'controverted' when a non-movant supplies additional facts and 'factual context' that do not actually dispute the movant's asserted fact." (citations omitted)); Fed. R. Civ. P. 56(e)(2).  Indeed, the narrative complains that Hanretta issued the final review "without addressing the content of Dunn's self-assessment," confirming that Dunn herself wanted Hanretta to take at least some time to consider her concerns with his initial ratings before coming to a final decision.  ECF 33-2 at 6.

activity," *Fruge v. Bd. of Governors of the Fed. Rsrv. Sys.*, No. 20-cv-2811, 2022 WL 5166031, at *19 (D.D.C. Oct. 5, 2022); *see also Bryant v. Brownlee*, 265 F. Supp. 2d 52, 70 (D.D.C. 2003), a reasonable juror could not find a causal link between Dunn's protected activity and her exclusion from these meetings.

This lack of casual evidence also illustrates why Dunn also cannot rebut the government's legitimate, nondiscriminatory reason for why she was excluded from these meetings. The government concedes that she was not invited to certain meetings but argues this exclusion was due to her lower seniority—not as retaliation. *See* ECF 30-3 at 3 (Mitchell email to Hanretta explaining that "[u]nfortunately, [she] can't add her to the HR Council as an alternate" because "membership is limited to executives unless there is no other alternative for an organization"). Based on the email exchange and testimony from Hanretta confirming that "many of the meetings are designated as SES level representatives, like the HR Council Meetings that [he] attend[s]," *id.* at 10, the government has put forth a convincing case that Dunn was not allowed to attend these meetings because of seniority. Citing an interrogatory answer where she asserted, without naming any specific names, that "[t]here are non-SES that attended these meetings," ECF 33-5 at 10, Dunn contends that the government's proffered reason is pretextual and that Hanretta could have sent her to the meetings because she was the only viable alternate given that no one else in their office managed human resources matters, *see* ECF 33-1 at 9. Yet Dunn has acknowledged that the alternate whom Hanretta sent to the meetings on his behalf was Rodney Emery, a member of the Senior Executive Service. *See* ECF 30-3 at 40; ECF 33-5 at 10, 30. Moreover, that the underlying exchange with Mitchell happened in 2016, ECF 30-3 at 3—long before Dunn filed her EEO complaint in 2017, *id.* at 85—further confirms that the record lacks support for Dunn's contention that the government's seniority explanation was pretextual. Accordingly, the government "has

pointed to evidence from which a jury could conclude that [Hanretta] honestly and reasonably believed [Dunn]'s presence was either not [allowed] or inappropriate," and Dunn "has failed to identify evidence from which a reasonable jury could not only disbelieve [Hanretta]'s reasons, but conclude that the real reason [he] did not invite [her] to certain meetings . . . was to retaliate against [Dunn] for her protected activity." *Allen v. Johnson*, 795 F.3d 34, 46 (D.C. Cir. 2015). This record of "mere disagreement with an employer about reasonable judgments concerning the employee's . . . meeting participation—judgments that are especially subject to managerial discretion—is not enough to sustain a Title VII claim." *Id.* at 41.

## IV.    Conclusion

For the foregoing reasons, the Court grants summary judgment to the government. An Order will be entered contemporaneously with this Memorandum Opinion.


DATE:  January 6, 2026

CARL J. NICHOLS
United States District Judge